IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BILLINGS DIVISION

| | |
|---|---|
| DARRELL R. DENNIS, | CV 23-90-BLG-SPW |
| Plaintiff, | |
| vs. | ORDER |
| MARTIN J. O'MALLEY, Commissioner of Social Security Administration, | |
| Defendant. | |

Plaintiff Darrell R. Dennis filed a complaint pursuant to 42 U.S.C. § 405(g), of the Social Security Act, 42 U.S.C. ch. 7, requesting judicial review of the final decision of the Commissioner of Social Security ("Commissioner") to deny Plaintiff's claim for supplemental security income under Title XVI of the Social Security Act. (Doc. 1). The Commissioner filed the Administrative Record ("A.R." or "the Record"). (Doc. 3).

Presently before the Court is Plaintiff's motion for summary judgment, seeking either reversal of the Commissioner's denial or remand for further proceedings. (Doc. 5). The motion is fully briefed and ripe for the Court's review.

For the following reasons, and after careful consideration of the Record and applicable law, the Court finds the case should be remanded for further administrative proceedings.

## I.     Procedural Background

On April 12, 2010, an Administrative Law Judge ("ALJ") found Plaintiff was disabled and granted his application for supplemental security income.  (A.R. 128, 136).  The ALJ found he had the following severe impairments: degenerative disc disease of the lumbar and lumbosacral spine with nerve root impingement; borderline intellectual functioning; dysthymic disorder; personality disorder; and post traumatic stress disorder.  (A.R. 135).

Plaintiff was convicted of sexual assault on September 12, 2017, and, as a result, his social security benefits were terminated.  (A.R. 233, 261).  He was released on August 22, 2019, to a prerelease facility.  (A.R. 233).

Between fall 2019 and July 2021, Plaintiff worked as a cashier at a gas station. (A.R. 46, 261).  Maintaining employment was a condition of his release.  (A.R. 235, 261).  Plaintiff quit a "couple of times" because of "increase[s]" in his mental health conditions.  (A.R. 48–49, 261).  His parole officer was "always able to help him get the job back."  (A.R. 261).  Plaintiff left the job permanently in July 2021 and moved to Billings to be closer to family.  (A.R. 49, 261).

Sometime in 2022, Plaintiff started working at Pizza Hut.  (A.R. 49).  He works four, four-hour shifts a week, for a total of 16 hours a week.  (A.R. 50).  He preps, cuts, and boxes pizzas.  (*Id.*).

On August 30, 2019, Plaintiff filed for supplemental security income. (A.R. 19). His applications were denied upon initial review on April 15, 2020, and on reconsideration on April 7, 2021. (*Id.*). On June 23, 2022, Plaintiff's attorney sent a letter to ALJ Michele Kelley agreeing to amend Plaintiff's onset date to August 1, 2021. (A.R. 261). The ALJ held a telephonic hearing on June 30, 2022. (*Id.*). During the hearing, the ALJ confirmed the amended onset date of Plaintiff's disability was August 1, 2021. (A.R. 19). On July 15, 2022, the ALJ issued her decision, denying Plaintiff's application. (A.R. 33). On June 15, 2023, the Appeals Council denied review, and the ALJ's decision became the Commissioner's final agency decision. (A.R. 7). Plaintiff thereafter filed the instant action. (Doc. 1).

## II.   Legal Standards

### A.   *Scope of Review*

The Social Security Act allows unsuccessful claimants to seek judicial review of the Commissioner's final agency decision. 42 U.S.C. §§ 405(g), 1383(c)(3). The scope of judicial review is limited. The Court must affirm the Commissioner's decision unless it "is not supported by substantial evidence or it is based upon legal error." *Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1998). *See also Farlow v. Kijakazi*, 53 F.4th 485, 487 (9th Cir. 2022). "Substantial evidence is more than a mere scintilla but less than a preponderance." *Tidwell*, 161 F.3d at 601. "Substantial evidence is relevant evidence which, considering the record as a whole, a reasonable

3

person might accept as adequate to support a conclusion." *Flaten v. Sec'y of Health & Human Servs.*, 44 F.3d 1453, 1457 (9th Cir. 1995). A court must uphold the denial of benefits if the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision. *Burch v. Barnhart*, 400 F.3d 676, 680–81 (9th Cir. 2005). *See also Flaten*, 44 F.3d at 1457 ("If the evidence can reasonably support either affirming or reversing the Secretary's conclusion, the court may not substitute its judgment for that of the Secretary."). In considering the record as a whole, the Court must weigh both the evidence that supports and detracts from the ALJ's conclusions. *Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985); *Day v. Weinberger*, 522 F.2d 1154, 1156 (9th Cir. 1975).

Even if the Court finds that substantial evidence supports the ALJ's conclusions, the Court must set aside the decision if the ALJ failed to apply the proper legal standards in weighing the evidence and reaching a conclusion. *Benitez v. Califano*, 573 F.2d 653, 655 (9th Cir. 1978). However, if the ALJ commits legal error, the Court should uphold the decision where that error is harmless. *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1099 (9th Cir. 2014). Harmless error means the ALJ's error was "inconsequential to the ultimate nondisability determination[.]" *Id.* (internal citation and quotation marks omitted).

### B.    Determination of Disability

A claimant is disabled if they are "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). An individual is considered disabled "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." *Id.* § 1382c(a)(3)(B). "'[W]ork which exists in the national economy' means work which exists in significant numbers either in the region where such individual lives or in several regions of the country." *Id.*

The Commissioner assesses a claimant's disability through a five-step sequential evaluation process. 20 C.F.R. § 416.920. If the ALJ finds the claimant not disabled at any step, they do not proceed to the next step. *Id.* § 404.1520(a)(4). The claimant bears the burden of establishing disability at steps one through four. *Burch*, 400 F.3d at 679. At the fifth step, the burden shifts to the Commissioner. *Id.* The five steps are:

> (1) Is the claimant currently working in a substantially gainful activity? If so, then the claimant is not disabled. If not, proceed to step two. *See* 20 C.F.R. § 416.920(b)

(2) Are the claimant's alleged medical impairments sufficiently severe to limit one's ability to work? *Id.* § 416.920(c).

(3) Is the alleged impairment of a severity to meet or equal one of a list of specific impairments described in 20 C.F.R., Part 220, Appendix 1, and does it meet the durational requirements? *Id.* § 416.920(d).

(4) Is the claimant able to do any work that they have done in the past? At this step, the ALJ assesses the claimant's residual functional capacity, or the most the claimant can do with their impairments and related symptoms. *Id.* §§ 416.920(e), (f); *Id.* § 416.945.

(5) Is the claimant able to perform other work that is available in the national economy? *Id.* §§ 416.920(g), (h).

*See Bustamante v. Massanari*, 262 F.3d 949, 954 (9th Cir. 2001).

## III.   The ALJ's Findings

The ALJ followed the five-step sequential evaluation process in considering Plaintiff's claim. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since August 1, 2021. (A.R. 22). At step two, the ALJ found Plaintiff had the following severe impairments that limit Plaintiff's ability to perform basic work activities: lumbar degenerative disc disease, bipolar disorder, anxiety with panic, personality disorder, and post-traumatic stress disorder. (*Id.*). At step three, the ALJ found Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments. (*Id.*).

Before considering step four, the ALJ determined Plaintiff had the residual functional capacity ("RFC") to:

6

perform light work as defined in 20 CFR 416.967(b): He can lift, carry, push and pull 10 pounds frequently and 20 pounds occasionally; walk and stand about 6 hours and in an eight-hour workday with normal work breaks; and sit about 6 hours in an 8-hour workday with normal work breaks. He can frequently crawl and occasionally climb ramps and stairs, ladders, ropes, and scaffolds, stoop, kneel, and crouch. He needs to avoid concentrated exposure to extreme cold, vibration, and hazards. Normal work breaks are defined as occurring every 2 hours with 2 breaks, lasting at least 10 minutes and one break lasting at least 30 minutes. He can understand, remember, and carry out simple tasks; maintain attention, concentration, persistence, and pace for such tasks for 8 hour workdays and 40 hour work weeks; tolerate occasional interaction with supervisors, coworkers, and the public; tolerate usual simple work situations; and tolerate occasional changes in routine work settings.

(A.R. 25–26).

At step four, the ALJ found Plaintiff unable to perform any past relevant work. (A.R. 31). Finally, at step five, the ALJ found that based on Plaintiff's age, education, work experience, and RFC, there were jobs that existed in significant numbers in the national economy that Plaintiff could perform, such as a housekeeper, price marker, or mail clerk sorter. (A.R. 31–32). Accordingly, the ALJ found Plaintiff not disabled. (A.R. 33).

## IV.    Discussion

Plaintiff presents seven issues for review:[1] (1) Did the ALJ improperly rely on evidence from prior to the amended onset date concerning his mental and physical

---

[1] Plaintiff's "statement of the issues presented for review" is difficult to reconcile with his briefing, as various arguments are interspersed at random throughout his brief. Accordingly, the Court has restated the issues as articulated here.

impairments? (2) Did the ALJ improperly refuse to defer to the 2010 ALJ's finding of disability in determining that Plaintiff did not meet the severity threshold for one of the listed impairments? (3) Did the ALJ properly evaluate the medical opinion of Alicia Breve? (4) Did the ALJ improperly fail to consider the special circumstances of Plaintiff's job as a cashier at the gas station following his release from prison? (5) Did the ALJ properly discount Plaintiff's subjective symptom testimony? (6) Was the ALJ's finding that Plaintiff can sustain light work-related activities supported by substantial evidence in the record? and (7) Did the ALJ properly incorporate all Plaintiff's impairments into the vocational expert's hypothetical? The Court will address each in turn.

### A.    *Evidence from Before the Amended Onset Date*

Plaintiff generally asserts the ALJ's analysis of his disability was incorrect because she improperly considered evidence from before the amended onset date to find Plaintiff's testimony was not consistent with the evidence in the record. (Doc. 5 at 6, 12, 16, 23–25). The Commissioner responds that the ALJ properly considered evidence from prior to the amended onset date because "ALJs are required to consider 'all evidence in [a claimant's] case record' in deciding whether they are disabled." (Doc. 7 at 7 (quoting 20 C.F.R. § 416.920(a)(3))).

The Court finds that the ALJ did not err in considering evidence from before the amended onset date. "Medical opinions that predate the alleged onset of

disability are of limited relevance." *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1165 (9th Cir. 2008). "This is especially true in cases ... where disability is allegedly caused by a discrete event." *Id.* Still, an ALJ is required to "consider all medical opinion evidence." *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008); 20 C.F.R. § 404.1527(b) ("In determining whether you are disabled, we will always consider the medical opinions in your case record together with the rest of the relevant evidence we receive."); *Id.* § 404.1527(c) ("Regardless of its source, we will evaluate every medical opinion we receive."). *See also Williams v. Astrue*, 493 F. App'x. 866, 868 (9th Cir. 2012) (explaining that the ALJ erred by silently disregarding medical opinions that predated alleged disability onset date). Records from prior to the amended onset date can be particularly relevant when they demonstrate the absence of evidence showing a worsening in a plaintiff's condition around the time of the amended onset date. *Yanes v. Berryhill*, No. 16-cv-518, 2017 WL 4181086, at *3 (E.D. Cal. Sept. 20, 2017) (citing *Carmickle*, 533 F.3d at 1165). In sum, "medical opinions are not per se irrelevant merely because they predate the disability onset date, particularly where the nature of the disability does not involve a traumatic onset." *Id.*

Thus, the ALJ's consideration of medical evidence from prior to the amended onset date was not per se improper, especially because Plaintiff's disability was not caused by a discrete event that occurred between his current and previous application

for benefits.  Further, the ALJ properly justified her use of evidence from prior to the amended onset date by noting the lack of evidence of an increase in severity of Plaintiff's conditions.  (*See, e.g.,* A.R. 28–29 (discussing how imaging of Plaintiff's back which occurred before and after the amended onset date does not show an increase in the severity of his symptoms)).  The Record also demonstrates consistency with respect to the severity of his mental health conditions.  The medical records post-dating the amended onset date acknowledge his anxiety, bipolarity, and depression (*see, e.g.,* A.R. 606, 613, 623), but also recount that Plaintiff consistently appears "alert and oriented," answers questions "appropriately," has a normal affect, and is "appropriate and pleasant," (A.R. 606, 611, 619, 603).

Thus, the ALJ did not err in considering the medical evidence from prior to the amended onset date.

B.    *2010 ALJ Determination of Disability*

Plaintiff next argues that the ALJ erred in not making any findings about the weight that should be afforded to a previous ALJ's determination of disability and grant of benefits in 2010.  (Doc. 5 at 9).  Plaintiff asserts the previous disability determination is relevant because his benefits were terminated as a result of his incarceration, not a determination that he was not disabled.  (*Id.*).

The Commissioner responds that *res judicata* does not apply to disability determinations because "'there is no presumption of continuing disability under the

Social Security Act.'" (Doc. 7 at 7 (quoting *Lambert v. Saul*, 980 F.3d 1266, 1268 (9th Cir. 2020))).

The Court agrees with the Commissioner that the ALJ did not err in omitting a discussion of the previous ALJ's decision because disability determinations "must be made 'on a neutral basis with regard to the individual's condition, without any initial inference as to the presence or absence of disability being drawn from the fact that the individual has previously been determined to be disabled[.]'" *Lambert*, 980 F.3d at 1276 (quoting 42 U.S.C. §§ 423(f), 1382c(a)(4)). The ALJ properly declined to give any weight to the 2010 ALJ's findings and disability determination.

C.    *Medical Opinion Evidence*

Plaintiff next argues the ALJ failed to properly consider the medical opinion of Alicia Berve, NP, for its supportability and consistency, as required by 20 C.F.R. § 416.920c(b)(2). (Doc. 5 at 26). The Commissioner counters that the ALJ rationally found that Berve's opinion was not supported and was inconsistent with the record. (Doc. 7 at 8).

Because Plaintiff applied for benefits after March 27, 2017, the ALJ considered the medical evidence under a new set of regulations regarding the evaluation of medical opinion evidence. 20 C.F.R. § 416.920c. The new regulations eliminated the use of the term "treating source" and the hierarchy between treating, examining, and non-examining physicians. *Id.* Under the new regulations, the ALJ

11

"will not defer or give specific evidentiary weight, including controlling weight, to any medical opinion(s) ...." *Id.* § 416.920c(a). The ALJ is directed to consider medical opinions or prior administrative medical findings together under the following "persuasiveness" factors: supportability, consistency, relationship with the claimant, specialization, and other factors such as the medical source's familiarity with other evidence in the claim or understanding of the disability program requirements. *Id.* § 416.920c(c)(1)–(5). Supportability and consistency are the most important factors, and the ALJ must explain how those factors were considered in the decision. § 416.920c(b)(2). "Supportability concerns how a medical source supports a medical opinion with relevant evidence, while consistency concerns how a medical opinion is consistent with the evidence from other medical and nonmedical sources." *Kitchen v. Kijakazi*, 82 F.4th 732, 740 (9th Cir. 2023) (internal quotation marks and citation omitted).

In the analysis, "an ALJ cannot reject an examining or treating doctor's opinion as unsupported or inconsistent without providing an explanation supported by substantial evidence." *Woods v. Kijakazi*, 32 F.4th 785, 792 (9th Cir. 2022). The ALJ "must articulate how persuasive it finds all of the medical opinions from each doctor or other source[] and explain how it considered the supportability and consistency factors in reaching [its] findings." *Woods*, 32 F.4th at 792.

Plaintiff makes four arguments with respect to the ALJ's consideration of Berve's opinion. The Court will address each in turn.

First, Plaintiff contends that the ALJ did not explain why she relied upon the agency physicians but ignored the findings of Berve. (Doc. 5 at 28). The Court disagrees. The ALJ spent nearly two pages addressing how persuasive she found each medical opinion, including Berve's, and why. (A.R. 29–30). Accordingly, the ALJ properly explained why she relied on the agency physicians and rejected Berve's findings.

Second, Plaintiff asserts that the ALJ did not explain how she considered the supportability and consistency factors in evaluating the persuasiveness of Berve's opinion. (Doc. 5 at 26). This is incorrect. The ALJ stated that the limitations on Plaintiff's ability to work that Berve noted "are *inconsistent* with the examination findings, overall, as well as the claimant's ability to work in a job with medium work like activities for two years prior to moving from Missoula to Laurel." (A.R. 30) (emphasis added). The ALJ also comments on Berve's opinion's supportability. Though the ALJ does not use the word "supportability," she states that Berve's opinion is unpersuasive because it is based solely on Plaintiff's report of what he feels he is capable of. (*Id.*). In other words, the ALJ determined Berve's opinion was not well supported because the evidence on which it was based was only

Plaintiff's subjective account of his symptoms and limitations. Accordingly, the ALJ did not fail to discuss Berve's opinion's supportability and consistency.

Third, Plaintiff contends that the ALJ incorrectly decided that Berve's opinion was inconsistent with the other medical evidence in the record. (Doc. 5 at 28). He specifically asserts that the ALJ ignored the MRIs and CT scans that confirmed his various severe back issues. (*Id.* at 28–29). The Commissioner responds that the medical evidence throughout the record shows "no abnormalities to support the limitations that Nurse Berve identified." (Doc. 7 at 9 (citing A.R. 454, 488, 532–33, 575–76, 594, 600, 603, 606, 611, 615, 626, 638, 650)).

As an initial matter, the ALJ discussed the imaging of Plaintiff's back. The ALJ explained, "The claimant's ability to work this job full time for two years (doing medium semi skilled work like activities) is inconsistent with his allegation of being totally unable to work, particularly because imaging of his back has not revealed an increase in the severity of his back condition and demonstrates that the condition has remained stable." (A.R. 28–29). The Court reads the reference to "imaging" as the MRI and CT scan.

However, the ALJ's conclusion that Berve's opinion was inconsistent with the other medical evidence was not supported by substantial evidence because she did not discuss the contemporaneous recommendation for fusion surgery. Berve's opinion was recorded on May 25, 2022—just over two weeks after a neurosurgeon

at the same practice as Berve recommended fusion surgery due to Plaintiff's "severe daily pain" and the failure of "extensive conservative" interventions. (A.R. 626). Thus, the most recent medical opinions indicate that Plaintiff's condition is severe enough to warrant major surgery. The ALJ's failure to consider this evidence—which is arguably the most relevant given its recency—rendered her conclusion on the consistency of Berve's opinion not supported by the substantial evidence.

Last, Plaintiff argues the ALJ incorrectly decided that Berve's opinion was unsupported because her opinion was solely based on Plaintiff's account of his limitations. (Doc. 5 at 26–27). The Court agrees with Plaintiff. Looking at Berve's notes, the ALJ is correct that on the first page, Berve notes that Plaintiff "feels as though he would be able to tolerate" certain restrictions. (A.R. 629). Importantly, this note is in the HPI, or History of Personal Illness, section of Berve's opinion. Later in her notes, in the Assessment and Plan section, Berve writes, "Note provided with work restrictions are requested by patient *as I feel this is appropriate given his current condition and chronic pain.*" (A.R. 631) (emphasis added). This notation indicates that Berve concluded, based on her expertise, that Plaintiff needed work restrictions. Her conclusion is not properly characterized as solely based on Plaintiff's account of his limitations but rather her *agreement* that those work restrictions are appropriate. Thus, though the ALJ applied the correct standard, her interpretation of Berve's opinion is not supported by the Record, and so her

conclusion that Berve's opinion was unsupported is not supported by substantial evidence.

The ALJ's conclusion regarding the consistency and supportability of Berve's opinion was not harmless error given the recency and relevancy of Berve's opinion compared with the other opinions in the Record. Berve's opinion, based on a May 25, 2022 appointment with Plaintiff, is one of the few opinions in the Record issued after the amended onset date and, again, is most contemporaneous with the recommendation for surgery. The recommendation for surgery is a significant development in Plaintiff's medical history, which warrants particular attention to that point in Plaintiff's medical history. Accordingly, the ALJ erred in concluding that Berve's opinion was unsupported.

### D. Failure to Consider Specific Circumstances Surrounding Employment at the Gas Station

Plaintiff next contends the ALJ erred by finding no evidence from Plaintiff's employer of a subsidized or sheltered employment, despite the "significant advantages" provided to Plaintiff by the accommodations his employer provided. (Doc. 5 at 20). Plaintiff cites Social Security Administration guidance on how an ALJ evaluates past relevant work when the employer offered accommodations that allowed the claimant to perform past relevant work with their impairment. (*Id.* at 21 (citing Social Security Administration, DI 25005.020, Program Operations Manual System (POMS) (April 13, 2017))).

In response, the Commissioner points out that Plaintiff admitted that his work between the fall of 2019 through July 2021 was a condition of his parole and at a substantial gainful employment level. (Doc. 7 at 6 (citing A.R. 249, 260)). More generally, the Commissioner argues the Court cannot reweigh the evidence in Plaintiff's favor. (*Id.*).

As stated, a person who is engaging in substantial gainful activity is not eligible for disability benefits. 42 U.S.C. § 1382c(a)(3)(A). Substantial gainful activity is defined as work "that involves doing significant physical or mental activities ... [and] is the kind of work usually done for pay or profit...." 20 C.F.R. § 416.972(a), (b).

The ALJ did not err in not discussing whether Plaintiff's work as a cashier was subsidized employment, and therefore not substantial gainful activity, because Plaintiff admitted that his work was substantial gainful activity. Plaintiff amended the onset date to August 1, 2021, because that was "just after his last [substantial gainful activity] job ended." (A.R. 261). Plaintiff cannot now come back and argue that his job as a cashier at the gas station was not substantial gainful activity.

E.    *Subjective Symptom Testimony*

Plaintiff next argues the ALJ improperly discounted his subjective symptom testimony without providing clear and convincing reasons for rejecting his

testimony. (Doc. 5 at 29). The Commissioner responds that the "ALJ's reasoning was sufficiently specific and substantial evidence supports it." (Doc. 7 at 2).

A claimant's testimony is analyzed in two steps. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009). "First, the ALJ must determine whether the claimant has presented objective evidence of an impairment or impairments that could reasonably be expected to produce the pain or other symptoms alleged." *Id.* (internal citation and quotation marks omitted). Second, if there is no affirmative evidence of malingering, the ALJ may reject the claimant's testimony only if she provides "specific, clear and convincing reasons" for doing so. *Id.* "In order for the ALJ to find [the claimant's] testimony unreliable, the ALJ must make 'a credibility determination with findings sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit claimant's testimony.'" *Turner*, 613 F.3d at 1224 n.3 (quoting *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002)). "General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998) (quoting *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995)). *See also Brown-Hunter v. Colvin*, 806 F.3d 487, 494 (9th Cir. 2015). The clear and convincing standard "is not an easy requirement to meet: [it] is the most demanding required in Social Security cases." *Garrison v. Colvin*, 759 F.3d 995, 1015 (9th Cir. 2014) (internal quotation and citation omitted).

18

To assess a claimant's subjective symptom testimony, the ALJ may consider (1) ordinary credibility techniques, (2) unexplained or inadequately explained failure to seek or follow treatment or to follow a prescribed course of treatment, and (3) the claimant's daily activities. *Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996). An ALJ also may take the lack of objective medical evidence into consideration. *Baston v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1196 (9th Cir. 2004).

Here, the ALJ determined that Plaintiff's medically determinable impairments could reasonably be expected to cause his symptoms, and there is no argument that he is malingering. Therefore, the ALJ was required to cite specific, clear, and convincing reasons for rejecting Plaintiff's subjective testimony about the severity of his symptoms.

The Court finds the ALJ's rejection of Plaintiff's subjective testimony concerning his back is not supported by substantial evidence because, again, the ALJ did not consider the doctor's conclusion that his back issue was severe enough to warrant surgery. (A.R. 626). Given the surgery recommendation's recency, it was not harmless error for the ALJ to not discuss either how the surgery recommendation impacts Plaintiff's credibility.

As to Plaintiff's mental state, the Court does not find the ALJ erred in finding Plaintiff's subjective testimony inconsistent with the medical records. The medical records do not contain any indication that Plaintiff's mental health issues are as

severe as he recounts.  Rather, as the ALJ found, practitioners consistently note that Plaintiff was not in distress, pleasant, and cooperative, responded to questions appropriately, and had logical and linear thought content. (*See, e.g.,* A.R. 454, 527, 603, 606, 615).  Most notably are the results from the most recent mental status examination (conducted in 2021), which found "no evidence that psychological factors would preclude [Plaintiff] from continuing to work as a cashier." (A.R. 584). Specifically, the examiner wrote that Plaintiff had "no gross deficits in attention, concentration, or memory," and that his "[v]erbal comprehension and expression … were within normal limits." (*Id.*).  These findings are in direct conflict with Plaintiff's account of the severity of his symptoms and justify the ALJ's rejection of Plaintiff's subjective testimony on his mental state.

Accordingly, the ALJ erred in rejecting Plaintiff's subjective testimony about the severity of his back condition as inconsistent with the medical record.  The Court remands for proper consideration of Plaintiff's testimony in light of the surgery recommendation.

F.     *Evidence of Ability to Sustain Work-Related Activities*

Plaintiff also argues the ALJ improperly ignored Social Security Rulings ("SSR") 96-8p in determining Plaintiff's ability to perform sustained work considering his mental and physical impairments. (Doc. 5 at 16–17).  Specifically, Plaintiff asserts the ALJ failed to consider "off task behavior exhibited and

evidenced by [Plaintiff] at multiple jobs" and "the accommodations provided by the employer" that Plaintiff testified to. (*Id*. at 17). Plaintiff also argues the medical records confirm his physical limitations, including his need to lie down and inability to lift. (*Id*. at 18). Plaintiff again mentions the recommendation for surgery, which would cause him to be off work for three to four months and to need another year for complete recovery. (*Id*.).

The Commissioner does not directly respond to this argument but in effect contends that much of the medical evidence contradicts Plaintiff's self-reported limitations, such as his need to lay down for 80% of a typical day. (Doc. 7 at 3).

SSR 96-8p outlines the requirements for the RFC assessment, or the assessment of "an individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis." SSR 96-8p, 61 Fed. Reg. 34474-01, at 34474 (July 2, 1996).

As to the impact of the imaging, the Court finds the ALJ did not err because the imaging is reasonably read as showing a consistency with Plaintiff's condition from before he quit his job as a cashier and after. The ALJ noted that this stability demonstrates his ability to engage in substantial gainful activity, as he did while working as a cashier. (A.R. 28–29).

However, the Court finds the ALJ erred in rejecting Plaintiff's account of his physical work limitations. While the ALJ considered Plaintiff's off-task behavior

and any accommodation provided by Plaintiff's employer, she did not consider how the surgery recommendation supported Plaintiff's account of his work limitations, particularly his work at Pizza Hut, given the contemporaneousness of the job and the surgery recommendation.[2]  Therefore, the ALJ's conclusion is not supported by substantial evidence. Accordingly, the ALJ erred in evaluating Plaintiff's ability to sustain work-related activities.

### G.    Vocational Expert's Hypothetical

Plaintiff last asserts the ALJ failed to incorporate all Plaintiff's impairments into the vocational consultant's hypothetical question.   Plaintiff specifically contends that the ALJ failed to incorporate that Plaintiff met the Listings and that he had certain limitations from his back condition.  (Doc. 5 at 31).  Plaintiff also asserts the ALJ failed to incorporate the limitations specified by Berve and the mental limitations which mandated sheltered work.  (Id.).

The Commissioner did not respond to this argument.

Hypothetical questions posed to the vocational expert must set out all the claimant's limitations and restrictions.  *Embrey v. Bowen*, 849 F.2d 418, 422 (9th Cir. 1988).  "The testimony of a vocational expert 'is valuable only to the extent that

---

[2] In contrast, while Plaintiff was working as a cashier, it appears the medical evidence did contradict his account of his work limitations.  For instance, during a February 6, 2021, appointment, the provider noted that Plaintiff "does not by exam exhibit any lifting or carrying limitations or restrictions." (A.R. 576).

it is supported by medical evidence.'" *Magallanes v. Bowen*, 881 F.2d 747, 756 (9th Cir. 1989) (quoting *Sample v. Schweiker*, 694 F.2d 639, 644 (9th Cir. 1982)). "If the assumptions in the hypothetical are not supported by the record, then the vocational expert's opinion that the claimant has a residual working capacity has no evidentiary value." *Embrey*, 849 F.2d at 422 (quoting *Gallant v. Heckler*, 753 F.2d 1450, 1456 (9th Cir. 1984)).

As discussed, the ALJ erred in assessing the persuasiveness of Berve's opinion, Plaintiff's subjective symptom testimony, and his ability to sustain work-related activities based on his physical limitations. Those errors, in turn, may have impacted the ALJ's determination of Plaintiff's RFC and conclusion that Plaintiff could perform certain work. The Court, therefore, finds the ALJ's determination at step five is not supported by the substantial evidence because her articulation of Plaintiff's physical limitations and restrictions is not based on a complete consideration of the relevant evidence in the Record.

## V.  Remand or Reversal

Having found that the ALJ erred, the Court next must decide whether remand or reversal is appropriate. Plaintiff asks the Court to reverse and award benefits, or, in the alternative, remand for proper consideration of the evidence regarding Plaintiff's physical limitations.

"The decision whether to remand a case for additional evidence or simply to award benefits is within the discretion of the court." *Reddick*, 157 F.3d at 728. If the ALJ's decision "is not supported by the record, 'the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation.'" *Hill v. Astrue*, 698 F.3d 1153, 1162 (9th Cir. 2012) (quoting *Benecke v. Barnhart*, 379 F.3d 587, 595 (9th Cir. 2004)). "If additional proceedings can remedy defects in the original administrative proceedings, a social security case should be remanded. Where, however, a rehearing would simply delay receipt of benefits, reversal [and an award of benefits] is appropriate." *Lewin v. Schweiker*, 654 F.2d 631, 635 (9th Cir. 1981).

The Court finds remand for further proceedings is appropriate. On remand, the ALJ shall remedy the above errors.

## VI.    Conclusion

Based on the foregoing, IT IS HEREBY ORDERED:

(1)    The Court GRANTS in part and DENIES in part Plaintiff's Motion for Summary Judgment (Doc. 5).

(2)    The Commissioner's decision be REVERSED and this matter be REMANDED pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this opinion.

DATED this 5th day of April, 2024.

SUSAN P. WATTERS
United States District Judge